UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| ANTON TAMIR MASON #460442 | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | NO. 2:12-cv-299 |
| | ) | *Greer/Inman* |
| DAVID SEXTON, ASST. WARDEN | ) | |
| WIGGINS, DR. LEE, NURSE | ) | |
| PRACTITIONER MCCHAFFENDEN, | ) | |
| NURSE CULLOP, NURSE PIERSON, and | ) | |
| CORPORAL ROBINSON | ) | |

**MEMORANDUM and ORDER**

Proceeding *pro se*, Anton Tamir Mason, a state inmate now confined in the Morgan County Correctional Complex, brings this civil rights under 42 U.S.C. § 1983, (Doc. 1). The defendants are various officials and medical care providers at the Northeast Correctional Complex ("NECX"), where plaintiff was formerly imprisoned. Plaintiff's motion for leave to proceed *in forma pauperis* is **GRANTED**, (Doc. 13), and he is **ASSESSED** the filing fee of three hundred and fifty dollars ($350), which is to be satisfied in incremental payments.

**I. Statutory Payment Plan**

The custodian of plaintiff's inmate trust account at the institution where he now resides shall submit, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to plaintiff's inmate trust account; <u>or</u> (b)twenty percent (20%) of the average monthly balance in his inmate trust account for the

six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B).

Thereafter, the custodian shall submit twenty percent (20%) of plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350.00 has been paid to the Clerk's Office.[1] *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997).

To ensure compliance with the fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate trust accounts at the institution where plaintiff is now confined.

## II. Screening the Complaint

The complaint now must be screened to determine whether it states a claim entitling plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In conducting its review, the Court will generously construe this *pro se* plaintiff's complaint and hold it to a less stringent standard than a formal pleading drafted by a lawyer. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S.

---

[1] Send the payments to:
Clerk, USDC
220 West Depot Street, Suite 200
Greeneville, TN 37743

544, 570 (2007), which simply means the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. Plaintiff's Allegations

In his complaint, plaintiff asserts that, from June to December of 2011, he submitted sick call requests, first complaining about hemorrhoids, then about an injury to his tail bone and his hip, which he had sustained when he fell from the pull-up bar. Each time, defendant Nurses Cullop and Pierson would charge him a $3.00 fee, give him some Ibuprophen, and assure him that the doctor would see him soon.

In January, 2012, plaintiff told defendant Corporal Robinson that he believed an officer was opening his cell door at night and had allowed "a inmate(s)" to sexually assault him. Plaintiff asked this defendant to have "a PREA rape kit done,"[2] but instead, defendant officer informed the captain of the shift. By policy, the captain was required to alert both defendants Warden David Sexton and Assistant Warden Wiggins as to the assault allegations

---

[2] Presumably, plaintiff means a PERK (Physical Evidence Recovery Kit) kit, which is a sexual assault evidence collection kit intended to be performed in a hospital by specially trained professionals. Rape, Abuse & Incest National Network, *What is a Rape Kit?*, *available at* http://www.rainn.org/get-information/sexual-assault-recovery/rape-kit (last visited Nov. 7, 2012) (copy in Clerk's file). "A rape kit is the evidence, including swabs with DNA, taken at a hospital from a woman's (or man's) body after a rape. Testing that DNA costs $1,200 or more." Nicholas D. Kristof, *Want a Real Reason to be Outraged?*, N.Y. Times Sunday Review, Oct. 28, 2012, at SR13, *available at* http://www.nytimes.com/2012/10/28/opinion/sunday/kristof-Outrageous-Policies-Toward-Rape-Victims.html?_r=0 (last visited Nov. 8, 2012) (copy in Clerk's file).

3

and to send plaintiff to an outside medical facility. The policy dictates were disregarded, and plaintiff was taken to center core, where he was interviewed by a nurse and, thereafter, referred to a mental health provider, as though he were hallucinating the rape.

In February of 2012, plaintiff filed a grievance concerning his request for a rape kit and the eight-month delay in plaintiff being seen by the doctor. In his grievance, he suggested that performing an X-ray of his back would resolve his complaint, since he suffered from constant back pain and since his hip alignment had grown worse. The day after plaintiff filed the grievance, defendants Nurses Cullop and Pierson, along with defendant Dr. Lee, came [to plaintiff's cell?]; and performed the X-ray. As reported by defendant Nurse McChaffenden, the X-ray results indicated that plaintiff was "just fine." Plaintiff appealed the disposition of his grievance, but Warden Sexton concurred with Grievance Board Chairperson's decision.

According to plaintiff, Dr. Lee paid weekly visits to plaintiff's unit, but gave plaintiff's issues short shrift. In May of 2012, days before plaintiff was transferred to his current facility, Dr. Lee saw him for less than five minutes and prescribed him a pain medication. Plaintiff attributes the delay in his seeing Dr. Lee to discrimination. Because plaintiff still suffers pain as a result of the negligence of defendants and has yet to receive proper medical care, he requests the following forms of relief: (1) a declaration that his constitutional rights were violated, (2) a preliminary and permanent injunction ordering defendants to stop treating medical issues so nonchalantly and to give him an apology, (3) compensatory and punitive damages, and (4) reimbursement of the costs of this lawsuit.

4

## IV. Discussion

A. <u>Moot Claims</u>

At the outset, the first two claims for relief (i.e., declaratory and injunctive relief) have been rendered moot because plaintiff is no longer housed at the facility where these events occurred and where these defendants are employed and because he could derive no benefit from ordering the relief he seeks. *Cardinal v. Metrish*, 564 F.3d 794, 799 (6th Cir. 2009) (A prisoner's request for declaratory and injunctive relief against prison officials becomes moot once he is transferred from the prison of which he complains.) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)).

B. <u>Medical Claims</u>

The remaining claims for damages are governed by the Eighth Amendment, which proscribes punishments that involve the unnecessary and wanton infliction of pain. Deliberate indifference to an inmate's serious medical needs constitutes an unnecessary and wanton infliction of pain and, therefore, a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An Eighth Amendment claim has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994).

The objective component requires the plaintiff to show a "sufficiently serious" deprivation. *Id.* A medical need may be objectively serious if even a lay person would recognize the seriousness of the need for medical care. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004)). When a prisoner asserts that medical treatment for a non-obvious condition was

5

Case 2:12-cv-00299   Document 18   Filed 11/09/12   Page 5 of 10   PageID #: 65

delayed, he can show that his condition was sufficiently serious, so as to satisfy the objective component of an Eighth Amendment claim, by "plac[ing] verifying medical evidence in the record to establish the detrimental effect of the delay." *Blackmore*, 390 F.3d at 897 (citing *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001)).

The subjective component requires a showing that a defendant possessed the state of mind of deliberate indifference. A plaintiff establishes deliberate indifference by showing that defendants were aware of facts from which they could infer that such a risk existed and that they actually drew that inference. *Farmer*, 511 U.S. at 837. Nonetheless, a prison official who takes reasonable measures to abate the risk avoids liability, even if the harm ultimately is not averted. *Id.* at 835-36. "Deliberate indifference is more than negligence and approaches intentional wrongdoing." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (citation and internal quotation marks omitted).

Also, where a prisoner receives some medical care and the dispute is over its adequacy, no claim has been stated. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). By the same token, no viable Eighth Amendment claim is stated by allegations that a medical condition has been negligently diagnosed or treated, and the mere fact that the victim happens to be a prisoner does not convert it into a constitutional violation. *Estelle*, 429 U.S. at 106.

Although plaintiff waited for months to see Dr. Lee, this does not offend the Constitution. This is so because plaintiff has failed to provide any medical evidence to verify that the delay he experienced in seeing Dr. Lee worked to his detriment. Indeed, though the

6

X-ray of plaintiff's back was performed only the day before he was transferred to another prison, the results of the X-ray showed him to be "just fine." Therefore, plaintiff has not established that he had a serious medical need, so as to constitute a "sufficiently serious deprivation," which would implicate the Eighth Amendment.

Nor was plaintiff entitled to demand medical care by a doctor, as opposed to receiving such care from another medical care provider. *See e.g.*, *Shedden v. United States*, 101 F. App'x. 114, 115, 2004 WL 1327926, at *1 (6th Cir. June 11, 2004) (inmate's contention that defendants did not refer him to an orthopedic specialist for treatment did not state an Eighth Amendment claim). The Eighth Amendment does not guarantee a prisoner "unqualified access to health care," *Hudson v. McMillian,* 503 U.S. 1, 9 (1992), or a right to dictate the treatment to be rendered. *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981) (finding that "[t]he right to be free from cruel and unusual punishment does not include the right to treatment of one's choice")

And even if plaintiff's failure to show a serious medical need were overlooked, there is no constitutional violation here because there is no evidence of deliberate indifference. Defendants did not disregard plaintiff's request for medical care since he received treatment in the form of pain medication, albeit at the hands of the nurses, and a diagnostic X-ray . *Farmer*, 511 U.S. at 844 (concluding that, by taking reasonable measures to abate the harm, a defendant avoids liability, even if the harm is not averted).

C. Discrimination Claim

Plaintiff maintains, in this claim, that Dr. Lee delayed seeing him for a discriminatory

7

reason. However, no factual elaboration has been offered to support this bare allegation. In order to state a § 1983 claim for the denial of equal protection under the law, a plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class. *Washington v. Davis*, 426 U.S. 229, 239 (1976). *See also Heckler v. Matthews*, 464 U.S. 728, 740 (1984) (unequal treatment claims usually cognizable only as to "excluded class"). There is nothing to indicate that plaintiff is a member of a protected class or that any delay in providing medical care was bottomed on a desire to discriminate against him. Simply put, plaintiff has not alleged sufficient facts to state a § 1983 claim for discrimination and the Court will not assume the existence of any such facts.

D. Rape Kit Claims

In his last claim, plaintiff asserts that he did not receive a rape kit upon his complaint of sexual assault but that he, contrary to correctional department policy, was interviewed by a nurse and referred for a mental health consultation. The Court infers from these allegations that plaintiff is raising claims under both the Fourteenth Amendment Due Process Clause and the Eighth Amendment as well.

First of all, defendants' failure to follow the prison policy (requiring allegations of sexual assault to be reported to prison officials and the alleged victim to be taken to an outside medical center) does not rise to the level of a due process violation protected by the United States Constitution. *See Sweeton v. Brown*, 27 F.3d 1162, 1165 (6th Cir. 1994) (State authorities "may have been required to follow their own procedural statutes and regulations

on parole . . . as a matter of state law, but there is not now any viable legal theory by which [] state authorities are required to follow such procedural rules as a matter of federal due process."); *see also Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir.1993) ("A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."). Since "[a] state statute cannot 'create' a federal constitutional right," *Harrill v. Blount County, Tenn.*, 55 F.3d 1123, 1125 (6th Cir. 1995), by logical extension, neither can a prison policy (unless it violates the standard enunciated in *Sandin v. Conner*, 515 U.S. 472, 848 (1995) (Due process is violated only when an atypical and significant hardship, which is not a usual incident of prison life, is imposed on prisoner.)).

Nor does plaintiff state a claim for an Eighth Amendment violation either. Given the nebulous nature of the contentions at issue here (i.e., plaintiff *believed* his cell door was left open by an officer to allow "a inmate(s)" to sexually assault him), it is unclear whether plaintiff has alleged that a "sufficiently serious" deprivation actually occurred, but if he has done so, he has not demonstrated deliberate indifference on the part of Corporal Robinson. After hearing plaintiff's assertions of sexual assault, this officer took plaintiff to the 'center core"part of the prison, where he was interviewed by a nurse concerning the alleged assault and referred for a psychological consultation. Plaintiff's sexual assault complaints were not ignored but, reading between the lines, were not found to be credible either. Not every allegation of assault, even one made by a free world citizen, need be accredited by the authorities, if an inquiry into the circumstances suggests otherwise. At any rate, defendant

9

Robinson employed reasonable measures to lessen any risk of harm to plaintiff and the Eighth Amendment requires no more than this. *Farmer*, 511 U.S. at 847 (prison official who takes reasonable steps to abate a risk to an inmate's safety avoids liability).

## V. Conclusion

Based on the above discussion, the Court finds that plaintiff has failed to state an arguable § 1983 claim against defendants. Fed. R. Civ. P. 12(b)(6). All pending motions are **DENIED** as **MOOT**, (Docs. 15-16). This case will be dismissed by separate order.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE